IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAMELA W.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

        Defendant.

Case No. 6:19-cv-00611-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Pamela W. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATIONS**

Plaintiff was born in February 1959, making her fifty-three years old on October 15, 2012, the alleged disability onset date. (Tr. 51, 75.) Plaintiff completed two years of college and has past relevant work experience as a caseworker and animal caretaker. (Tr. 20, 30.) In her applications, Plaintiff alleges disability due to migraines, fatigue, kidney stones, and chronic leukemia. (Tr. 51-52, 76.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on August 1, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on April 26, 2018. (Tr. 28-49.) On May 14, 2018, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 13-21.) On February 25, 2019, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.  THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2012, the alleged disability onset date. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) "chronic lymphocytic leukemia," (2) "mild left shoulder degenerative disc disease, synovitis, and osteoarthritis," (3) kidney stones, and (4) migraines. (Tr. 15.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 16.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently, (2) Plaintiff can "stand and/or walk" for six hours in an eight-hour workday, (3) Plaintiff can sit for six hours in an eight-hour workday, and (4) Plaintiff can engage in "no more than occasional overhead reach[ing] with her left upper extremity." (Tr. 16.) At step four, the ALJ concluded that Plaintiff could perform her past work as a caregiver as generally performed in the national economy, and therefore concluded that Plaintiff was not disabled. (Tr. 20.)

PAGE 4 – OPINION AND ORDER

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; and (2) consider the opinion of Plaintiff's treating physician, Terence Young, M.D. ("Dr. Young"). (Pl.'s Opening Br. at 2.) As explained below, the Court concludes that the ALJ's decision is free of harmful legal error and supported by substantial evidence, and therefore the Court affirms the Commissioner's decision.

I.    **PLAINTIFF'S SYMPTOM TESTIMONY**

   A.    **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms

PAGE 5 – OPINION AND ORDER

complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.   Analysis

In this case, there is no evidence of malingering and the ALJ determined that Plaintiff has provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 18, reflecting that the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discrediting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ met that standard here.

#### 1.   Plaintiff's Activities

The ALJ discounted Plaintiff's testimony on the ground that it was inconsistent with her reported activities. (*See* Tr. 17, reflecting that the ALJ noted that Plaintiff testified that her impairments, such as chronic fatigue, prevent her from performing more than two tasks (e.g., shopping and assisting her mother) per day, she needs to rest the day after performing her two activities, she has spent "most of the day in a recliner since 2012," and her "ongoing migraines" cause her to "need to lie down [and] rest in a dark room twice a week" for at least an hour or two, and that the ALJ determined that Plaintiff's symptom testimony is not supported by, among other things, her activities, which are "discussed in detail below"; Tr. 19, citing the specific activities and records that the ALJ believed undermined Plaintiff's "assertions related to the intensity, persistency, and limiting effects of her symptoms and conditions"). In support of this finding, the ALJ noted that Plaintiff reported that (1) she handles "her personal care, prepares

PAGE 6 – OPINION AND ORDER

simple meals, performs chores and yard work, drives, shops, manages her finances, and cares for her mother once a week," (2) she "spends her time socializing with others, attending church, listening to music, reading, gardening, using the computer, and traveling internationally," and (3) she "helped care for farm animals and homeschooled some neighborhood children part-time." (Tr. 19, citing Tr. 217-224, 268, 282, 389, 398, 403-04, 463, 545, 547, 548, 616).

It is well settled that an ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). Even where the claimant's "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citation omitted).

As a threshold matter, Plaintiff argues that the ALJ's reliance on her reported activities was misplaced because the ALJ "failed to identify which testimony was contradicted." (Pl.'s Br. at 8.) On page seventeen of her opinion, however, the ALJ described the testimony that was undermined by Plaintiff's reported activities: (1) her migraines cause her to "need to lie down [and] rest in a dark room twice a week," (2) she spent "most of the day in a recliner since 2012," and (3) fatigue prevents her from performing more than two tasks on consecutive days. (*See*

PAGE 7 – OPINION AND ORDER

Tr. 17, detailing this testimony and determining that Plaintiff's testimony is inconsistent with her activities, which the ALJ stated were "discussed in detail below"; Tr. 19, detailing specific activities that the ALJ determined were inconsistent with Plaintiff's "assertions related to the intensity, persistency, and limiting effects of her symptoms and conditions"; *see also* Tr. 32, 40, reflecting that Plaintiff testified that after performing two tasks on one day, her chronic fatigue causes her to need to "stay in [her] anodized . . . chair" the whole next day, that she lies "down most of every day, or [is] in a recliner most of the day," and that "at least once or twice a week," she needs to lie down in a dark room for "at least an hour or two"; Tr. 218, showing that Plaintiff completed an adult function report stating that "most of [her] day is spent sitting in [her] recliner resting").

In light of the foregoing, the Court concludes that the ALJ did not err by failing to "identify which testimony was contradicted." Cf. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) ("[W]e require the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony.' . . . That means '[g]eneral findings are insufficient.'") (citations omitted).

Plaintiff also argues that the ALJ's reliance on her reported activities was misplaced because the ALJ cited activities that are not readily transferrable to a work environment, and because Plaintiff did not spend a substantial part of her day engaged in activities that are readily transferable to a work environment. (*See* Pl.'s Br. at 9, acknowledging that a claimant's activities may be grounds for discounting a claimant's testimony if the claimant spent a "substantial part" of her day engaged in activities that are "transferrable to a work setting," but arguing that the ALJ only cited activities that are "not readily 'transferable to a work environment,'" and that

there is "no indication that the limited activities [Plaintiff] engaged in comprised a 'substantial' portion of her day").

Contrary to Plaintiff's argument, the ALJ discounted Plaintiff's testimony on the ground that she engaged in activities that contradicted her testimony regarding the severity of her impairments, not because her activities amount to transferable skills. *See Denton v. Astrue*, No. 11-1066-SI, 2012 WL 4210508, at *6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."); *see also Thommen v. Colvin*, No. 12-01625-SI, 2013 WL 5819099, at *7 (D. Or. Oct. 29, 2013) ("A claimant's daily activities can form the basis of an adverse credibility determination in two circumstances: first, where the activities contradict other testimony, and second, where the activities meet the threshold for transferable skills. . . . For a credibility analysis, the ALJ 'need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'").

Finally, Plaintiff argues that the ALJ's reliance on her activities was misplaced because "some" of the activities that the ALJ cited were "mischaracterized, taken out of context, or otherwise consistent with [her] testimony." (Pl.'s Br. at 6.) By way of example, Plaintiff notes that the ALJ discounted her testimony based on the time she spent traveling abroad, even though she informed the ALJ that she only travels to Cambodia about "once every two years" to visit family and that she does "the same thing" in Cambodia that she does at home. (Pl.'s Br. at 6-7, citing Tr. 41).

During the hearing, the ALJ did ask Plaintiff about the record references to her "overseas trips," and Plaintiff explained that she goes to Cambodia "every two years" to visit family and

PAGE 9 – OPINION AND ORDER

that she does "the same there that [she does] here." (Tr. 41.) In discounting Plaintiff's testimony based on her travel activities, however, the ALJ cited and relied on records that (1) reveal that Plaintiff performed missionary work during her overseas trips, and (2) support the ALJ's finding that Plaintiff's activities contradict her testimony (i.e., her testimony that she spends most days in her recliner, she needs to lie down in a dark room for several hour at least once or twice a week, and she cannot perform more than two activities on consecutive days). (*See* Tr. 282, showing that on July 29, 2013, Plaintiff reported that "she felt perfectly well while in Cambodia . . . this winter"; Tr. 389, reflecting that on January 27, 2015, Plaintiff reported that she "plan[ned] to travel to Cambodia for approximately 1 month in the next several days"; Tr. 398, noting that on December 3, 2015, Plaintiff reported that she "regularly visits Cambodia where she participates in mission work," and that she had been to Cambodia "perhaps 6 times"; Tr. 545, indicating that on March 25, 2017, Plaintiff reported that she "recently returned from a missionary trip to Haiti"; Tr. 547, showing that on August 8, 2017, Plaintiff reported that she was "planning a trip to Malaysia in October for about one month"; Tr. 616, reflecting that on September 15, 2017, Plaintiff reported that she was "[g]etting ready to go to Malaysia" for a month; Tr. 548, noting that on December 14, 2017, Plaintiff reported that she had "been to Cambodia and back without incident"; *see also* Tr. 280, reflecting that Plaintiff's urologist stated that "she goes almost yearly to Cambodia").

Given this evidence, it was reasonable for the ALJ to conclude that Plaintiff's travel activities were inconsistent with her testimony regarding the severity of her impairments. *See Willens v. Berryhill*, 709 F. App'x 867, 868 (9th Cir. 2017) ("[T]he ALJ correctly noted that since his onset date Willens had traveled to Mexico where he walked quite a bit, and this was inconsistent with his testimony of disabling limitations."); *Romanelli v. Astrue*, 267 F. App'x

PAGE 10 – OPINION AND ORDER

722, 724 (9th Cir. 2008) ("The ALJ reasonably concluded that Ms. Romanelli's claimed limitation of being unable to stand for more than fifteen minutes at a time was inconsistent with her testimony about her physical activities such as traveling around the United Kingdom for two weeks[.]"); *Tommasetti*, 533 F.3d at 1040 ("[T]he ALJ doubted Tommasetti's testimony about the extent of his pain and limitations based on his ability to travel to Venezuela for an extended time to care for an ailing sister. The ALJ could properly infer from this fact that Tommasetti was not as physically limited as he purported to be."); *Rubio v. Colvin*, No. 14-cv-06230, 2016 WL 1050034, at *2 (C.D. Cal. Mar. 16, 2016) ("The ALJ noted that Plaintiff reported taking a trip to Israel, Egypt, and Jordan in May and/or June 2011, which the ALJ found to be inconsistent with Plaintiff's claimed disabilities. . . . It was reasonable for the ALJ to conclude that if Plaintiff was capable of traveling from California to the Middle East for vacation she was not as limited as she claimed to be.").

In addition to Plaintiff's travel, the ALJ also discounted Plaintiff's testimony based on her ability to attend church, maintain her personal care, prepare simple meals, drive, and manage her finances. (Tr. 19; *see also* Tr. 43, 218-21, reflecting that Plaintiff testified that she is "very involved" in her church, she attends church "once a week," "[c]hurch can be a long day," she drives her mother to medical appointments, she has no problem getting dressed, bathing, caring for her hair, shaving, feeding herself, or using the toilet, she can prepare simple meals on a daily basis, and she can pay bills, count change, handle a savings account, and use a checkbook). Plaintiff does not argue that the ALJ mischaracterized these activities or took them out of context. Nor does she argue that the ALJ erred in discounting her testimony based on these activities.

PAGE 11 – OPINION AND ORDER

Plaintiff does, however, argue that the ALJ mischaracterized, or took out of context, her ability to care for her mother, homeschool kids in her neighborhood, garden, shop, and care for animals. (Pl.'s Br. at 6-8.) Given the activities described above and the evidence addressed below, the Court concludes that Plaintiff has failed to demonstrate that the ALJ committed a harmful error in finding that her activities were incompatible with the degree of alleged impairment. *See Molina*, 674 F.3d at 1115 ("[W]e have adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'") (citation omitted).

In her function report, Plaintiff responded "Yes" to the question that asked about whether she took "care of anyone else such as a wife/husband, children, grandchildren, parents, [or] friend," and noted that she "check[s]" on her mother every week and "take[s] her to doctor appointments" when necessary. (Tr. 218.) During the hearing, Plaintiff also testified that her mother is in a care facility and she "take[s] her" mother to appointments. (Tr. 32.) Although Plaintiff did not serve as her mother's caregiver, it is clear that she provided some care to her mother.

As to Plaintiff's homeschool activities, the record reveals that (1) on January 6, 2014, Plaintiff told her physician that she "teaches homeschool to other children in the neighborhood and also ha[s] computer work that she does from home," and (2) on January 27, 2015, Plaintiff told her oncologist that she "does work part time as a teacher and also works at home." (Tr. 268, 389.) During the hearing, Plaintiff explained that she listened to neighbor kids read for "a couple hours" twice a week, she was not paid, and she engaged in this activity for "[p]robably half a year." (Tr. 42.) Even if the ALJ was not entirely accurate in stating that Plaintiff homeschooled children in her neighborhood, the record demonstrates that Plaintiff told her providers that she

PAGE 12 – OPINION AND ORDER

did so and that Plaintiff testified that for at least six months, she read with neighbor kids for several hours a week. Accordingly, the Court finds that the ALJ did not commit harmful error in characterizing Plaintiff's work with kids or discounting her testimony based in part on such work.

As to Plaintiff's ability to garden, Plaintiff did report that her gardening "need[s] to be severely paced" and that she can longer engage in "marathon sessions to get the job done." (Tr. 221.) But Plaintiff also reported that she gardens "fairly well" and "daily [on] most days." (Tr. 221.) Accordingly, and in light of the activities described above, the Court concludes that the ALJ did not commit harmful error in characterizing Plaintiff's ability to garden. (*See also* Tr. 375, showing that Plaintiff was "digging ditches, etc." after taking a Z-Pak to treat her fatigue).

As to Plaintiff's ability to shop and care for animals, the record reveals that (1) in her function report, Plaintiff testified that she shops in stores or by computer "1-2 [times a] month," (2) during the hearing, Plaintiff testified that she occasionally needs to break her shopping up into multiple trips due to her fatigue, and (3) in her function report and during the hearing, Plaintiff testified that her husband now cares for the animals on their family farm. (Tr. 32, 43, 218, 220.) Even if the ALJ erred in relying on the foregoing activities, the Court concludes that any error was harmless in light of the activities and record evidence described above.

For these reasons, the ALJ did not err in discounting Plaintiff's testimony based on her reported activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("[T]he ALJ's interpretation of [plaintiff's] testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").

///

**2.      Effective Management**

The ALJ also discounted Plaintiff's testimony on the ground that her "migraines were generally well managed with medication (and at times caffeine)." (Tr. 17; *see also* Tr. 18, showing that the ALJ cited specific records in support of her finding that Plaintiff's migraines were well-managed). This is a clear and convincing reason for discounting a claimant's testimony. *See Reyes v. Colvin*, No. 14-1463, 2015 WL 1383144, at *7 (C.D. Cal. Mar. 25, 2015) (holding that the ALJ met the clear and convincing reasons standard and noting that the ALJ discounted the claimant's testimony based in part on the fact that "her knee pain was well managed with pain medication"); *Michelle S. v. Berryhill*, No. 3:18-cv-1595-AC, 2019 WL 4415089, at *4 (D. Or. Sept. 16, 2019) (holding that the ALJ met the clear and convincing reasons standard and noting that the claimant's reported symptoms "were well-managed with conservative means").

The ALJ cited several treatment records that demonstrate that her finding was reasonable and supported by substantial evidence in the record (i.e., more than a mere scintilla of evidence, but less than a preponderance). (*See* Tr. 287, noting that on May 29, 2013, Plaintiff's physician stated that her migraines were "improved" on medication, Tr. 263, reflecting that on January 22, 2014, Plaintiff reported that her migraine medication "has worked well for her for many years"; Tr. 256, showing that on April 21, 2014, Plaintiff reported that she had "not actually had any headaches, even breakthrough headaches, for quite some time" and that her "medication does work well"; Tr. 398, indicating that on December 3, 2015, Plaintiff reported her migraine medication is "helpful"; Tr. 515, reflecting that on July 19, 2016, Plaintiff reported that "her migraines have become better with having 2 ounces of espresso every day" and that "she gets daily headaches but relief with espresso-2 ounces and does not need Excedrin"; Tr. 614, noting that on April 25, 2017, Plaintiff told her provider that "[e]spresso helps her migraines"; *see also*

PAGE 14 – OPINION AND ORDER

Tr. 519, showing that on July 19, 2016, Plaintiff's provider added that Plaintiff's migraines were "now improved with daily espresso intake of 2 ounces," Plaintiff was "off of Topamax," and Plaintiff was "not needing when necessary Tylenol 3 for this at this time").

Plaintiff argues that the ALJ erred in finding that her migraines were well-managed with medication and caffeine, noting that in late 2017, she reported that several of her past migraine medications were not helpful, that she continued to have migraines, and that espresso was "waning in efficacy." (Pl.'s Br. at 10, citing Tr. 548, 618-19.) Although Plaintiff provides an alternative, rational interpretation of the medical record, the Court must uphold the ALJ's interpretation because it is also rational and supported by substantial evidence. *See Pilcher v. Berryhill*, No. 3:16-cv-617-SI, 2017 WL 3433686, at *8 (D. Or. Aug. 10, 2017) ("Despite [plaintiff's] alternative interpretations of the medical record, the Court must uphold the ALJ's interpretation because it is rational and supported by substantial evidence."); *Childers v. Colvin*, No. 6:13-cv-01922-SI, 2015 WL 464333, at *8 (D. Or. Feb. 4, 2015) ("While [plaintiff] provides an alternative, rational interpretation of the [claimant's] medical findings, the Commissioner's reasonable conclusion must be upheld." (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005))).

In sum, the ALJ did not err in finding that Plaintiff's migraines were well-managed on medication and caffeine.

### 3. Conclusion

The Court concludes that it must uphold the ALJ's decision to discount Plaintiff's testimony because the ALJ provided at least two clear and convincing reasons for doing so. *Cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (upholding the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the claimant's] testimony as not

credible"); *Johaningmeier v. Berryhill*, No. 3:16-cv-2027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason"); *see also Burrell*, 775 F.3d at 1140 (holding that the ALJ's errors were harmful because the ALJ only provided one "weak" reason to discount the claimant's symptom testimony).

## II.   MEDICAL OPINION EVIDENCE

### A.   Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it

PAGE 16 – OPINION AND ORDER

with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. at 1012-13 (citation omitted).

  **B.**  **Analysis**

  Plaintiff argues that the ALJ erred by failing to consider the opinion of her treating physician, Dr. Young. The record suggests that Plaintiff established care with Dr. Young at some point between mid-February 2016 and March 29, 2016. (*See* Tr. 75, 464-65, Ct. Tr. Index at 2-3, showing that Plaintiff filled out Dr. Young's Initial History and Physical Form when she was fifty-seven years old and that Dr. Young's first treatment note is dated March 29, 2016). In his treatment note dated March 29, 2016, Dr. Young noted Plaintiff's "[h]istory [and] physical in the chart," and then stated that Plaintiff "has been pretty much totally disabled for the last 4 years." (Tr. 464.)

  The parties do not dispute that the ALJ did not mention Dr. Young's statement that Plaintiff has been "pretty much totally disabled for the last 4 years" in her decision. The parties do, however, dispute whether the ALJ's failure to mention Dr. Young's statement was harmless error.

  The Ninth Circuit has addressed the harmless error doctrine in a somewhat similar situation. *See Marsh v. Colvin*, 792 F.3d 1170, 1171 (9th Cir. 2015). In *Marsh*, the claimant's medical records included an opinion and clinical progress ("SOAP") notes from David Betat, M.D. ("Dr. Betat"). *Id.* Dr. Betat's SOAP notes stated, among other things, that the claimant's condition rendered her "pretty much nonfunctional" and that the claimant "appear[ed] to be disabled." *Id.* The ALJ denied the claimant's application for benefits without mentioning Dr. Betat or his SOAP notes, and the district court affirmed. *Id.* On appeal, the Ninth Circuit held that the "harmless error [doctrine] applie[d] . . . to assess the impact of the ALJ's failure to even mention Dr. Betat or his SOAP notes, let alone [his] failure to give 'specific and legitimate

PAGE 17 – OPINION AND ORDER

reasons that are supported by substantial evidence' for rejecting a treating source's medical opinion."[2] *Id.* at 1172 (citation omitted). The Ninth Circuit also explained how to evaluate whether an ALJ's failure to mention a treating physician's opinion amounts to harmless error:

> We reject the idea that not mentioning a treating source's medical opinion precludes use of harmless error doctrine, but at the same time, because our law requires 'specific and legitimate reasons that are supported by substantial evidence' for rejecting a treating source's medical opinion, that precedent surely implies that an ALJ must discuss the relevant views of a treating source. Our precedents do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless, and we would hesitate to suggest a rigid rule for all such cases. But it does seem that where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless. In other words, the more serious the ALJ's error, the more difficult it should be to show the error was harmless.
>
> Here, the district court gave persuasive reasons to determine harmlessness. But the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court. In the circumstances of this case, where the ALJ did not even mention Dr. Betat's opinion that [plaintiff's condition] rendered her 'pretty much nonfunctional,' we cannot 'confidently conclude' that the error was harmless. We think it is most appropriate to vacate the district court's opinion, remand with instructions to the district court to remand to the ALJ, and specifically to invite the ALJ to comment on Dr. Betat's medical opinions and records. This remand is pursuant to sentence four[.]

*Id.* at 1173 (internal citations omitted).

---

[2] The specific and legitimate reasons standard applies to Dr. Young's opinion because, unlike Dr. Young, the non-examining state agency physicians determined that Plaintiff was not disabled. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[I]n the case of a conflict 'the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician'") (citation omitted); *Kilian v. Barnhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("Kilian's contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining physician, and the ALJ supported his decision with specific and legitimate reasons.").

Consistent with *Marsh*, the Court finds that the ALJ erred when she failed to mention Dr. Young's statement that Plaintiff had been disabled for the last four years.[3] However, unlike *Marsh*, this Court can confidently conclude that the error was harmless, and here's why: Nearly two years after Dr. Young stated that Plaintiff had been disabled, Plaintiff's specialist, David Hufnagel, M.D. ("Dr. Hufnagel"), opined that Plaintiff is "medically unable to engage in full-time employment." (Tr. 607.) The ALJ assigned "no weight" to Dr. Hufnagel's opinion that Plaintiff was "unable to engage in full-time employment," because she found it inconsistent with, among other things, Plaintiff's reported activities, which the ALJ detailed before addressing Dr. Hufnagel's opinion. (Tr. 19.) That is significant because (1) in this appeal, Plaintiff does not argue that the ALJ failed to provide legally sufficient reasons for discounting Dr. Hufnagel's opinion, and (2) as discussed, it was reasonable for the ALJ to find that Plaintiff's activities undermined her claim of disability. Thus, there is no substantial likelihood of prejudice, because the ALJ discounted a nearly identical opinion for reasons that Plaintiff does not challenge on appeal, and for at least one reason that the Court found was a valid basis for discounting Plaintiff's testimony. *See Marsh*, 792 F.3d at 1173 ("[W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary. By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate."). Accordingly, the Court concludes that the ALJ's failure to mention to Dr. Young's opinion was harmless error because it was not likely to affect the ALJ's decision that Plaintiff is not disabled. *See Kelly v. Colvin*, 669 F. App'x 401, 401-02 (9th Cir. 2016) ("To the extent that the ALJ erred by failing to discuss Dr. Lang, or

---

[3] The ALJ did cite Dr. Young's notes in discounting Plaintiff's testimony. (*See* Tr. 18-19, citing Exhibit 9F at 1-2.)

PAGE 19 – OPINION AND ORDER

assign weight to Dr. Mayers or Dr. Deem, we hold those errors to be harmless in that they were not likely to have affected the ALJ's decision that Kelly was not disabled.").

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 15th day of April, 2020.

STACIE F. BECKERMAN
United States Magistrate Judge